# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 10, 2010

No. 09-60509

Lyle W. Cayce
Clerk

LOUISIANA INSURANCE GUARANTY ASSOCIATION; BATON ROUGE MARINE CONTRACTORS INC,

Petitioners

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR; NATIONAL BEN FRANKLIN INSURANCE COMPANY, PITTSBURGH, PENNSYLVANIA; FIDELITY AND CASUALTY COMPANY OF NEW YORK; ROBERT HARVEY,

Respondents

Petitions for Review of an Order
of the Benefits Review Board

Before DAVIS, SMITH, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

This case arises from Claimant Robert Harvey's ("Harvey") claim before an administrative law judge ("ALJ") for benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"). The issues in this petition are whether the Benefits Review Board ("BRB") erred in affirming the ALJ's findings that: (1) Harvey's "last injurious exposure" to absestos occurred in 1977; (2) Harvey involuntarily retired; (3) Harvey suffers from a total disability; (4) the

No. 09-60509

Louisiana Insurance Guarantee Association ("LIGA")[1] was responsible for payment of Harvey's claims due to the insolvency of the otherwise responsible insurance carrier; and (5) LIGA is also responsible for payment of medical benefits without a credit for possible, but thus far unproven, payments from Harvey's existing health insurance coverage. Finding no reversible error, we DENY the petition for review.

## I. FACTUAL & PROCEDURAL BACKGROUND

A. Harvey's Work History

Harvey worked as a longshoreman at the Port of Greater Baton Rouge from 1965 to 1977. His primary employer during that time was Petitioner Baton Rouge Marine Contractors ("BRMC"). For a large part of the 1960s, Harvey's primary job was to unload bags of asbestos from the holds of ships docked in the port. In 1970, Harvey began working as a crane operator and remained in that position until changing employers and facilities in 1977. As a crane operator, Harvey no longer directly handled bags of asbestos, but he continued to pass through warehouse facilities where asbestos was stored in order to access BRMC's cranes. During this time, the BRMC warehouses were not decontaminated to remove background asbestos fibers deposited in the ordinary course of handling.

In 1977, Harvey began working for the State of Louisiana. His new employment first led him to transfer to the Baton Rouge Barge Terminal and then to the Slack Water Canal. Though he eventually returned to the main port facility, he never again worked with asbestos. Harvey worked for the State from 1977 until his retirement in 2005.

---

[1] LIGA is an entity created by the Louisiana legislature to "provide a mechanism for the payment of covered claims under certain insurance policies" on behalf of insolvent insurers. LA. REV. STAT. ANN. § 22:2052 (2010).

No. 09-60509

B.  Harvey's Medical History

Harvey was first diagnosed with pulmonary asbestosis in 1998 by Dr. Glenn Gomes.  In 2002, Harvey sought treatment from Dr. Mark Hodges.  As a result of tests, Dr. Hodges concluded that Harvey was moderately impaired and that his lung capacity was 55% of predicted and his diffusion capacity was 71% of predicted.  Additional testing in 2004 led Dr. Hodges to opine that Harvey had become severely restricted with a lung capacity of 40% of predicted and diffusion capacity of 41% of predicted.  By the time of a 2006 report, Dr. Gomes opined that Harvey's condition had significantly worsened from his original 1998 diagnosis such that his total lung capacity had been reduced to 49% of predicted and his diffusion capacity was 37% of predicted.

Harvey testified that, due to his medical condition, he "wasn't going to be able to climb stairs and roam around those docks and up and down the railroad tracks like [he] needed to" to perform his job.  He also testified that these limitations, at least in part, motivated his decision to retire.

C.  BRMC's Insurance History

BRMC was covered by four different insurance companies for various periods during Harvey's employment from 1965 to 1977.  Relevant here is that Employers' National Insurance Company provided coverage from October 1, 1972 until November 1, 1982.  It was declared insolvent and placed into receivership in 1994.  Consequently, LIGA appeared in place of Employers' National in the proceedings below.

D.  Proceedings Below

The ALJ conducted a formal hearing, including the taking of live testimony from Harvey, on May 10, 2007.  In a Decision and Order dated April 30, 2008, the ALJ awarded Longshore Act compensation for the injuries flowing from Harvey's asbestosis.  Specifically, the ALJ found that: 1) Harvey's asbestosis was causally related to his work for BRMC; 2) Harvey's injuries

3

constituted permanent and total disability; 3) Harvey's retirement in 2005 was involuntary insofar as it was at least partially caused by his medical condition; 4) the "last injurious exposure" related to Harvey's asbestosis occurred in 1977; 5) BRMC bears full liability under the LHWCA's "last responsible employer" rule; and 6) LIGA, as the substitute party for the insolvent Employers' National Insurance Company, was the responsible carrier. The ALJ also awarded Harvey all reasonable and necessary medical care for services related to his asbestosis, including reimbursement for any past abestosis-related medical expenses.

The parties cross-appealed the ALJ's April 30 Decision and Order and the BRB affirmed on May 11, 2009. LIGA timely filed the instant petition for review on July 8, 2009.

## II. STANDARD OF REVIEW

The BRB's final order is subject to review in the United States Court of Appeals for the circuit in which the injury occurred. 33 U.S.C. § 921(c) (2010). In reviewing a decision of the BRB, our "only function is to correct errors of law and to determine if the BRB has adhered to its proper scope of review i.e., has the [BRB] deferred to the ALJ's fact-finding or has it undertaken de novo review and substituted its views for the ALJ's." *Avondale Shipyards, Inc. v. Vinson*, 623 F.2d 1117, 1119 n.1 (5th Cir. 1980). Stated differently, once the BRB affirms an order of the ALJ, we need only inquire whether the BRB "correctly concluded that the ALJ's order was supported by substantial evidence on the record as a whole and is in accordance with the law." *Ingalls Shipbuilding, Inc. v. Dir., OWCP*, 991 F.2d 163, 165 (5th Cir. 1993) (internal quotation marks omitted).

With respect to issues of law, we review the BRB's rulings de novo. *Pool Co. v. Cooper*, 274 F.3d 173, 177 (5th Cir. 2001). As for findings of fact, we have repeatedly acknowledged that the ALJ, as sole factfinder, "is entitled to consider all credibility inferences [and the ALJ's] selection among inferences is conclusive if supported by the evidence and the law." *Mendoza v. Marine Pers. Co.*, 46 F.3d

498, 500 (5th Cir. 1995) (internal quotation marks and citation omitted).  *See also Bollinger Shipyards, Inc. v. Dir., OWCP*, 604 F.3d 864, 870-71 (5th Cir. 2010).

## III. DISCUSSION

As stated above, the petition before us presents five issues for review. Three of those issues require us to analyze the ALJ's factual findings: (1) that 1977 was the "last injurious exposure"; (2) that Harvey involuntarily retired; and (3) that Harvey was totally disabled.  The other two issues are questions of law: (1) did the ALJ and BRB err in assigning full liability to LIGA by extension of the "last responsible employer" rule; and (2) did the ALJ err in awarding medical costs related to Harvey's asbestosis without awarding a credit for unknown and unproven payments from another source?  We address each issue in turn.

*A.  The ALJ's Factual Findings*

We must accept factual findings supported by "substantial evidence" on the record as a whole.  *New Orleans Stevedores v. Ibos*, 317 F.3d 480, 483 (5th Cir. 2003).  "'Substantial evidence is that relevant evidence—more than a scintilla but less than a preponderance—that would cause a reasonable person to accept the fact finding.'"  *Coastal Prod. Servs. Inc. v. Hudson*, 555 F.3d 426, 430 (5th Cir. 2009) (quoting *Dir., OWCP v. Ingalls Shipbuilding, Inc.*, 125 F.3d 303, 305 (5th Cir. 1997)).  Based on the record evidence, the BRB correctly found that all three of the ALJ's challenged factual findings were properly supported by substantial evidence.

1. Last Injurious Exposure

LIGA contends that Harvey's last injurious exposure occurred before 1971 when Employers' National began providing coverage to BRMC.  Specifically, LIGA contends that, because Harvey stopped working directly with asbestos after 1970, he therefore never again suffered an injurious exposure.  In making this argument, LIGA attacks the expert testimony of Frank Parker by arguing

that Parker's opinion contradicted Harvey's testimony and that Parker's testimony was speculative. Neither argument has merit and, accordingly, we find the BRB correctly affirmed the ALJ's ruling as to "last injurious exposure."

The ALJ had substantial evidence demonstrating that Harvey worked in warehouses where latent asbestos fibers subjected him to toxic background exposure for the duration of his employment with BRMC. Consequently, we conclude the BRB correctly held that the ALJ had substantial evidence to find that the "last injurious exposure" occurred in 1977.

2. Involuntary Retiree Status

Next, BRMC contends that Harvey failed to advance sufficient evidence for the ALJ to find that his retirement was "involuntary." As the BRB explained below, if a claimant's work-related injury played a role in causing his retirement, then the retirement is "involuntary." *See Harmon v. Sea-Land Serv., Inc.*, 31 BRBS 45, 1997 WL 295228, at *4 (DoL Ben. Rev. Bd. 1997).[2] Here, the ALJ was presented with substantial evidence supporting the finding that Harvey's illness contributed to his decision to retire in the form of Harvey's own testimony and evidence from Drs. Gomes and Hodges describing Harvey as suffering from a "significant impairment." BRMC offered no rebuttal evidence to contradict this evidence. Harvey's failure to file for a medical retirement and his failure to exclude all other explanations for his retirement do not provide grounds to set aside the ALJ's factual findings. As previously noted, the ALJ, as sole factfinder,

---

[2] In its briefing, BRMC takes issue with the ALJ's reliance on *Hansen v. Container Stevedoring Co.*, 31 BRBS 155, 1997 DOLBRB LEXIS 52 (DoL Ben. Rev. Bd. 1997). Specifically, BRMC argues that the ALJ erred in adopting *Hansen*'s holding that: "Where, however, a claimant's retirement is due, at least in part, to his occupational disease, claimant is not a voluntary retiree . . . ." *Id.* at *8. While *Hansen* involved different facts as BRMC asserts, its statement of the standard for assessing voluntariness is accurate and was appropriately adopted by the ALJ. *See Harmon*, 1997 WL 295228, at *4 (asserting same standard); *Pryor v. James McHugh Constr. Co.*, 18 BRBS 273, 1986 WL 67110, at *6 (DoL Ben. Rev. Bd. 1986) (same); *McDonald v. Bethlehem Steel Corp.*, 18 BRBS 181, 1986 WL 66356, at *2 (DoL Ben. Rev. Bd. 1986) (same).

"is entitled to consider all credibility inferences [and his] selection among inferences is conclusive if supported by the evidence and the law." *Mendoza*, 46 F.3d at 500 (internal quotation marks and citation omitted). We conclude that the ALJ's determination of Harvey's retiree status was properly supported by substantial evidence.

### 3. Harvey's Total Disability

In a similar fashion, BRMC argues that the BRB erred in affirming the ALJ's finding that Harvey suffers from a total disability because he did not seek a disability retirement and his doctors did not testify that he was 100% impaired. To establish a prima facie case of total disability, the claimant must show that he is unable to return to his regular or usual employment due to his work related injury. *See La. Ins. Guar. Ass'n v. Abbott*, 40 F.3d. 122, 127 (5th Cir. 1994). The availability of suitable alternative employment distinguishes partial from total disability. *Id.* at 126. "[O]nce a claimant demonstrates that he is unable to perform his former longshore employment tasks because of a job-related injury, he has made a prima facie case of total disability. The burden then shifts to the employer, should it wish to reduce or eliminate its compensation liability, to establish that the employee is capable of performing other realistically available jobs." *Id.* at 127. In light of this burden-shifting framework and the strong presumption of correctness afforded ALJ findings, BRMC has failed to show that Harvey was not totally disabled.[3]

---

[3] BRMC's argument regarding the testimony of Drs. Gomes and Hodges appears to be based on a misreading of the evidence. BRMC contends Dr. Hodges claimed that Harvey was 40% disabled and Dr.Gomes claimed that Harvey was 49% disabled. In reality, Dr. Hodges claimed Harvey was 60% disabled and Dr. Gomes claimed Harvey was 51% disabled. Read properly, the medical testimony presented to the ALJ—spanning from 1998 until 2006—explicitly states that Harvey had declined from moderate impairment to severe impairment by the time of his retirement.

No. 09-60509

*B. LIGA's Liability as the Last Responsible Carrier*

Because we find that the BRB correctly affirmed the ALJ's resolution of the three factual issues discussed above, we must next consider whether the BRB erred in affirming the ALJ's assignment of full responsibility to LIGA. More precisely, we must decide whether the ALJ erred in applying the LHWCA's "last responsible employer" rule rather than a pro rata recovery scheme in light of LIGA's special status as a state-created guarantee association. LIGA argues that it should not be bound by the "last responsible employer" rule because: (1) Louisiana law demonstrates that it is not a "carrier" under the rule; and (2) its liability as a replacement party for an insolvent insurer must be prorated among all available insurers as required by its enacting legislation and Louisiana caselaw. LIGA's position is premised upon a misunderstanding of both Louisiana and federal law. We find LIGA was correctly held liable as a carrier under the LHWCA's "last responsible employer" rule.

The "last responsible employer" rule, also known as the "last exposure" rule, originated as a policy position adopted by the administrator of the Longshore Act. The rule was first judicially adopted by the Second Circuit in *Travelers Insurance Company v. Cardillo*, 225 F.2d 137, 145 (2d Cir. 1955). Under the rule as acknowledged in this circuit, "the employer 'during the last employment in which the claimant was exposed to injurious stimuli . . . should be liable for the full amount of the award.'" *New Orleans Stevedores v. Ibos*, 317 F.3d 480, 483 n.2 (5th Cir. 2003) (quoting *Cardillo*, 225 F.2d at 145); *see also Cooper/T. Smith Stevedoring Co. v. Liuzza*, 293 F.3d 741, 749 (5th Cir. 2002); *Levingston Ship Bldg. Co. v. Pelaez*, 312 F. App'x 711, 713 (5th Cir. 2009) (unpublished). The rule further mandates that "the treatment of carrier liability was intended to be handled in the same manner as employer liability, and that

8

the carrier who last insured the 'liable' employer during claimant's tenure of employment . . . should be held responsible . . . ." *Cardillo*, 225 F.2d at 145.[4]

LIGA first contends that the "last responsible employer" rule should not apply because LIGA does not constitute a "carrier" within the meaning of the rule. LIGA's argument fails, however, in light of the authorizing statute that created it. Under section 22:2058 of the Louisiana Revised Statutes, LIGA is "deemed the [insolvent] insurer to the extent of [the insolvent insurer's] obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent . . . ." LA. REV. STAT. ANN. § 22:2058(A)(2) (2010). In short, LIGA stepped into Employers' National's shoes when Employers' National became insolvent. In so doing, it incurred all of Employers' National's obligations—including the obligation to cover liabilities arising as a consequence of the application of the "last responsible employer" rule. Moreover, LIGA's attempt to narrowly construe its enacting legislation to limit coverage runs directly contrary to the requirement under Louisiana law that "the provisions of [LIGA's enabling legislation] must be interpreted to protect claimants and policyholders and to advance their interests rather than the interests of [LIGA]." *Morris v. E. Baton Rouge Parish Sch. Bd.*, 826 So. 2d 46, 51-52 (La. Ct. App. 2002) (citing *Senac v. Sandefer*, 418 So. 2d 543, 545-46 (La. 1982)). Thus, both the Louisiana legislation and caselaw defining LIGA's status clearly demonstrate that the ALJ correctly concluded that LIGA constitutes a "carrier" for the purposes of applying the rule.

*Southern Silica of Louisiana Inc. v. Louisiana Insurance Guaranty Association*, 979 So. 2d 460 (La. 2008) is not to the contrary. Its application of a pro rata share of liability was based upon the fact that the suit was brought on

---

[4] No party to this litigation questions the validity of the "last responsible employer" rule or its extension to insurance carriers.

a Louisiana tort theory that would have required the insolvent insurer to pay a pro rata share of liability. *Id.* at 468. Here, under the LHWCA, the applicable law of allocation would have assigned all liability to Employers' National as the last responsible carrier. LIGA took full responsibility for that comprehensive liability when it appeared as the replacement party for Employers' National.[5] Hence, the BRB and ALJ correctly determined that Harvey was under no obligation to exhaust any coverage provided by BRMC's previous insurers.[6]

## C. *LIGA's Liability for Harvey's Medical Expenses*

LIGA contends it is entitled to a credit against the ALJ's award because Harvey is covered by heath insurance through his retirement plan.[7]    Under section 22:2062 of the Louisiana Revised Statutes, the payment by other

---

[5]  LIGA incorrectly asserts that the application of the LHWCA to apply the "last responsible employer" rule to it effectively "trumps" state law. As perhaps best articulated in the Department of Labor's brief, the issue is nothing more than a matter of sequence. Under Louisiana law, the first question that must be asked is what type of case is being litigated. If the case had been filed under Louisiana tort law, then the pro rata scheme would have applied. Here, however, the suit was filed under the LHWCA and, thus, the ALJ was required by Louisiana law to apply the law of allocation for claims arising under that statute. Therefore, the application of the "last responsible employer" rule in this case not only does no harm to Louisiana law but, rather, complies with its strictures.

[6]  Further, the Louisiana Supreme Court has also held that the mere existence of other solvent carriers does not protect LIGA from liability where solvent carriers did not cover the period for which the defendant seeks recovery. *Hall v. Zen-Noh Grain Corp.*, 787 So. 2d 280, 281-82 (La. 2001). To avoid this issue, LIGA advances an elaborate waiver argument on the theory that the insurance carriers inappropriately acted in concert with BRMC at the outset of the instant litigation. But as the BRB explained below, the insurance carriers did not act in concert to defend BRMC against the subject claim; instead, each defended the specific periods of time for which it covered the employer's risk under the LHWCA. No one was misled by any carrier into thinking that that carrier would provide coverage for a time period other than the period set forth in the subject policy. Additionally, the only case cited by LIGA on this topic—*Steptore v. Masco Constr. Co.*, 643 So. 2d 1213 (La. 1994)—addresses a state law claim against a general liability carrier, not an LHWCA claim against an employer's workers' compensation liability carrier.

[7]  The parties agree that Harvey is currently covered by a health insurance policy provided by the state as part of his retirement. However, neither side placed the actual policy in evidence before the ALJ or BRB, and no one could point to any actual payments made by this carrier for any medical problems for which LIGA has been adjudged liable to pay benefits.

No. 09-60509

insurance of the same medical expenses entitles LIGA to a credit for those payments in order to avoid double recovery.  LA. REV. STAT. ANN. § 22:2062(A) (2010).  The only evidence about other insurance contained in the record is that Harvey received insurance as a continuation of his coverage under the Louisiana Office of State Group Benefits administered by United Health Care.  Nothing in the record indicates whether Harvey's health insurance policy would or could cover his work-related asbestosis injuries.  More importantly, nothing in the record supports a conclusion that any other carrier paid or is obligated to pay any amount for which LIGA should then receive a credit.  Louisiana cases have placed the burden on LIGA to provide evidence for recovery of the credit, and this placement of the burden makes sense in light of the overall policy underpinning LIGA's creation—to benefit policyholders and claimants of insolvent carriers.  *See Morris v. E. Baton Rouge Parish Sch. Bd.*, 826 So. 2d 46, 55 (La. Ct. App. 2002) (granting LIGA a credit only for the amount shown actually paid); *see also Jones v. GMC*, 871 So. 2d 1109, 1117 (La. 2004) (requiring employers seeking workers' compensation offsets to bear the burden of demonstrating their entitlement to a credit).  LIGA concedes that it did not offer evidence regarding Harvey's health insurance coverage or any other information demonstrating that Harvey's medical costs related to his asbestosis were paid or payable by another source.  Thus, LIGA has failed to demonstrate that its contention necessitates reversal of the BRB's award of medical costs.

## IV.  CONCLUSION

For the reasons set forth above, the petition for review of the decision of the BRB is DENIED.

11