# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 17, 2017

Lyle W. Cayce
Clerk

No. 16-60370

BOLLINGER SHIPYARDS, INCORPORATED; AMERICAN LONGSHORE MUTUAL ASSOCIATION,

      Petitioners

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; KENNETH R. WORTHEY; THOMA-SEA SHIPBUILDERS, L.L.C.; LOUISIANA WORKERS' COMPENSATION CORPORATION,

      Respondents

Petition for Review of an Order of the
Benefits Review Board
BRB No. 15-0382

Before STEWART, Chief Judge, and HIGGINBOTHAM and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:*

Kenneth Worthey worked on and off at Bollinger Shipyards for about fifteen years.  He was a welding supervisor, a job that involved exposure to

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-60370

welding fumes, sandblasting dust, industrial cleaning solvents, and other fumes and chemicals. In 2008, his physician, Robert Bourgeois, told him that he could no longer wear a respirator due to airway obstruction. Following a medical release to fix some knee and shoulder problems, Worthey sought to return to work for Bollinger in March 2010. Bollinger required him to be examined by Bourgeois before returning. On March 22, 2010 Bourgeois diagnosed Worthey with chronic obstructive pulmonary disease after administering a pulmonary function test. Worthey testified that Bourgeois told him that he could not return to work, advised him to see a pulmonologist, and recommended that he apply for social security disability.

Instead, Worthey applied to work for Thoma-Sea Shipbuilders. Worthey passed Thoma-Sea's pre-employment physical and worked as a welding supervisor from March 29 through May 18, 2010, when he was fired for sleeping on the job.

Worthey subsequently filed claims under the Longshore and Harbor Worker's Compensation Act seeking compensation for, among other health problems, his respiratory condition. 33 U.S.C. § 901 *et seq.* After that filing in July 2010, another physician—Glenn Gomes—examined Worthey and administered another pulmonary function test, which gave results essentially the same as the March test. Gomes told Worthey that he could not return to any job that exposed him to fumes or dust.

The main question in Worthey's administrative proceeding was which employer would be responsible for paying his benefits and medical expenses. An administrative law judge initially concluded that Bollinger was solely liable because it failed to rebut the Act's presumption that it caused Worthey's pulmonary disease. The Benefits Review Board remanded the case, however, requiring the ALJ to also determine whether Thoma-Sea could rebut the Act's

presumption and to more closely identify the date of the onset of Worthey's disability. After undergoing the required analysis, the ALJ reaffirmed its earlier conclusion that Bollinger was solely liable, and the Board affirmed. Bollinger now seeks judicial review of the administrative ruling.

\* \* \*

Our review of the Board's decision asks only whether the Board "correctly concluded that the ALJ's order was supported by substantial evidence on the record as a whole and is in accordance with the law." *Ingalls Shipbuilding, Inc. v. Director, OWCP*, 991 F.2d 163, 165 (5th Cir. 1993) (quoting *Avondale Indus., Inc. v. Director, OWCP*, 977 F.2d 186, 189 (5th Cir. 1992)). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion," and reviewing courts defer to the ALJ's decision in weighing the credibility of conflicting evidence. *Id.*

The Act allows claimants to invoke a presumption that their claim falls within the Act. 33 U.S.C. § 920(a). For Worthey to invoke the presumption against Bollinger, he had to show that 1) he suffered harm, and 2) conditions existed at Bollinger that could have caused, aggravated, or accelerated his condition. *See Conoco, Inc. v. Director, OWCP*, 194 F.3d 684, 687 (5th Cir. 1999). The ALJ found that Worthey could prove both, and Bollinger does not challenge that finding. Once the presumption is invoked, an employer can rebut it only through substantial evidence establishing there was no connection between the injury and the employment. *Gooden v. Director, OWCP*, 135 F.3d 1066, 1068 (5th Cir. 1998). The question on rebuttal is not whether the employer can show that exposure did not have the potential to cause disease, but whether the employer proved that the claimant's disease was not caused by the employer's workplace or that the employee was

3

performing work for a subsequent employer when he was exposed to injurious stimuli. *New Orleans Stevedores v. Ibos*, 317 F.3d 480, 485 (5th Cir. 2003).

The ALJ found that Bollinger was the last responsible employer as defined by the Second Circuit's widely adopted rule in *Travelers Insurance v. Cardillo*, 225 F.2d 137, 145 (2d Cir. 1955). Under that rule, the responsible employer in an occupational disease case is the last employer during whose employment the claimant was exposed to injurious stimuli, prior to the date the employee became aware that he was suffering from an occupational disease arising from the employment. *Id.*; *see also Ibos*, 317 F.3d at 483 n.2.

Bollinger attempts to rely on a complication that has arisen in applying this "last responsible employer" rule. *Cardillo* speaks of the time when the claimant became aware he was suffering from an occupational disease. *Cardillo*, 225 F.3d at 145. But what if the date the claimant becomes aware of the disease is different from the date of disability? Although the circuits that have decided the issue generally tie liability to the date of disability, there are variations in how they formulate the test. Bollinger asks us to apply the First Circuit's rule that focuses solely on the date of disability in determining the last responsible employer. *See Liberty Mut. Ins. v. Commercial Union Ins.*, 978 F.2d 750, 756 (1st Cir. 1992) (setting the date for the last responsible employer "prior to the date the claimant became disabled by an occupation disease"); *but see, e.g., Argonaut Ins. v. Patterson*, 846 F.2d 715, 721 (11th Cir. 1988) (determining last responsible employer by the date when the claimant "should have become aware of the connection between his disability, his disease, and his employment when he first missed work because of his disease").

We need not decide how to deal with the situation when the diagnosis and disability dates are different, because the ALJ found that both of these events occurred on March 22, 2010 when Bourgeois examined Worthey.

4

No. 16-60370

Bollinger now tries to challenge that timing of the disability finding, but he did not do so before the Board so that argument is forfeited. *Ingalls Shipbuilding, Inc. v. Director, OWCP*, 976 F.2d 934, 938 (5th Cir. 1992). In any event, there was more than substantial evidence to support the finding that the doctor's diagnosis in March, which included recommending that Worthey apply for disability, is the date on which Worthey was disabled. That Worthey worked for a number of weeks after that date does not dictate a contrary conclusion.

Bollinger also attempts to avoid full liability by asserting that Worthey's brief stint at Thoma-Sea contributed to his pulmonary condition. It is not apparent why the Board required Thoma-Sea to rebut the presumption of liability after Bollinger was shown to be the last responsible employer. If the last responsible employer rule is designed to save courts and claimants the work of portioning liability among multiple employers, the inquiry should seemingly end after the ALJ has determined that an employee was aware of the disability and identified the last employer before that awareness. *See Cardillo*, 225 F.2d at 145 (noting that the last responsible employer rule facilitates "efficient administration" for occupational disease cases). Although an aggravation rule of course applies to workplace injuries, *see Strachan Shipping Co. v. Nash*, 782 F.2d 513, 517 (5th Cir. 1986) (en banc), it is not clear how that applies after there has been a finding of full disability. Regardless, Thoma-Sea did rebut the presumption by disproving that is caused Worthey's disability.

To implicate Thoma-Sea, Bollinger points to Worthey's post-July 2010 tests showing a decline in his pulmonary function after working for Thoma-Sea, testimony by Gomes that Worthey's employment at Thoma-Sea worsened his condition, and Worthey's own testimony to that effect. But the ALJ considered this evidence before concluding that Thoma-Sea did not contribute

5

to Worthey's disability.  The ALJ was more convinced by other evidence that implicated Bollinger: earlier tests indicating that Worthey's condition resulted from his work with Bollinger; testimony from Bourgeois that concluded the same; and the results of Worthey's July pulmonary function test being identical to those from the March test.  The ALJ also put considerable weight on Gomes's later testimony that Worthey's time with Thoma-Sea did not aggravate his pulmonary condition, which slightly contradicted his earlier testimony.

"[I]t is fundamental that credibility determinations and the resolution of conflicting evidence are the prerogative of the fact finder."  *Atlantic Marine, Inc. v. Bruce*, 661 F.2d 898, 900 (5th Cir. 1981) ("We also reject petitioners' suggestion that we should review the relative weight assigned by the ALJ to the . . . testimony.").  The ALJ's decision came down to this routine crediting of some pieces of evidence over others.  Bollinger does not point to any evidence that the ALJ failed to consider.  The Board was therefore correct in concluding that the ALJ relied on substantial evidence in finding that liability rests solely with Bollinger, the employer for whom Bollinger worked for several years as opposed to the one for whom he worked less than two months.

The petition for review of the decision of the Benefits Review Board is DENIED.