# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60707

PETRON INDUSTRIES, INCORPORATED; AMERICAN HOME
ASSURANCE COMPANY,

Petitioners,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR; RYAN COURVILLE,

Respondents.

Petition for Review of an Order of the
Benefits Review Board
BRB No. 14-0079

Before STEWART, Chief Judge, and BARKSDALE and PRADO, Circuit
Judges.

PER CURIAM:*

Respondent Ryan Courville ("Courville") filed a claim for benefits under
the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901, *et
seq.*, against Petron Industries ("Petron") and American Home Assurance
(collectively, "Petitioners"), alleging that he injured his thoracic spine while
lifting equipment aboard an inland barge in 2007. Relevant to this petition,
Courville sought Petron's authorization of surgical intervention for his spine

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

United States Court of Appeals
Fifth Circuit

**FILED**
September 9, 2015

Lyle W. Cayce
Clerk

No. 14-60707

injury, which Petron denied. Following a formal hearing, the Administrative Law Judge ("ALJ") ordered Petitioners to pay for the surgery, which had been recommended by Courville's treating physician. The Benefits Review Board ("BRB") affirmed the ALJ's order, deciding that it was supported by substantial evidence and in accordance with the law. For the following reasons, we deny the petition for review.

## I.    Facts & Procedural History

In February 2007, Courville suffered a work-related thoracic-level spine injury while lifting a briefcase containing satellite equipment aboard an inland barge bound for a drilling rig.        On March 19, 2007, Courville saw Dr. Patrick Juneau who reviewed an MRI of Courville's thoracic spine and recommended physical therapy but did not recommend surgical intervention at that time. Seeking a second opinion, Courville began treatment with orthopedic surgeon Dr. John Cobb who also reviewed the MRI and recommended physical therapy and prescription medication. In June 2007, Courville expressed to Dr. Cobb that the physical therapy was exacerbating his pain, rather than alleviating it, so Dr. Cobb referred Courville to Dr. Steven Staires, a pain management specialist. Dr. Staires performed epidural injections, a rhizotomy, and physical therapy, none of which relieved Courville's pain so he was referred back to Dr. Cobb for further treatment. Dr. Cobb continued to administer further rounds of alternative treatments, none of which improved Courville's condition. Consequently, in January 2009, Dr. Cobb recommended surgery[1] and requested Petron's authorization.

Following Dr. Cobb's recommendation of surgery, Petron sought a second medical opinion from Dr. Wayne Lindemann, who saw Courville in February

---

[1] Specifically, Dr. Cobb recommended an "instrumented posterior [spinal] fusion" ranging from levels T8 through T12 and also possibly levels T5 through T6.

2

No. 14-60707

2009. Dr. Lindemann reviewed the medical records from Dr. Staires's office and the MRI from 2007 and concluded that the alternative conservative therapy undergone by Courville had proved unsuccessful and that it was "more likely than not" that surgical intervention would be required. Upon receiving Dr. Lindemann's review, Petron sought yet another medical opinion from Dr. Stanley Foster, who reviewed the same records approximately two months later and concluded that Courville did not need surgical intervention and could return to work on a medium duty job.

Due to the conflicting recommendations regarding surgery, the Office of Workers' Compensation Programs assigned an independent medical examination of Courville with Dr. Paul Fenn on February 24, 2010. Dr. Fenn obtained and MRI of Courville's thoracic spine and diagnosed Courville with thoracic disc degeneration, but did not recommend surgical intervention and opined that Courville had reached maximum medical improvement ("MMI").

Subsequently, Dr. Cobb died and was replaced by Dr. John Sledge as Courville's treating orthopedic physician. Dr. Sledge saw Courville in April 2012 and ordered a second MRI of Courville's thoracic spine, which was administered the following month. After reviewing the MRI, Dr. Sledge concluded that Courville had not improved after years of physical therapy, medication, and activity modification but was nevertheless "not a surgical candidate" because—as he later testified—Petron continued to refuse to authorize payment "for the diagnostic test [required] to confirm" whether surgery was necessary. With few other options, Dr. Sledge referred Courville for further pain management. Dr. Sledge saw Courville again in February 2013, at which time Courville expressed an interest in undergoing "definitive treatment," *i.e.*, surgical intervention. Dr. Sledge testified that he concurred in the assessments of Drs. Cobb and Lindemann regarding surgical intervention and sought to gather records demonstrating the ineffectiveness of Courville's

3

No. 14-60707

physical therapy, pain management, and other alternative treatments to "submit for [authorization of] surgical intervention."

A formal hearing was held before the ALJ in July 2013. In his Decision and Order, the ALJ first determined that Courville had not yet reached MMI. He then found that Courville had established a *prima facie* claim of total disability by demonstrating that he was unable to return to the type of work he was performing at the time of the injury. However, he found that Petron had successfully rebutted Courville's *prima facie* claim by establishing the existence of suitable alternative employment—that was reasonably available—beginning on January 4, 2011. Moreover, he noted that Courville had failed to exercise due diligence in seeking to obtain that employment.

Additionally, while the ALJ acknowledged the conflicting medical opinions of the physicians who had evaluated Courville, he also noted that, in certain circumstances, the opinion of a treating physician may be entitled to greater weight than the opinion of a non-treating physician. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830 n.3 (2003). Thus, he found that Courville had established a *prima facie* entitlement to the medical treatment recommended by his treating physician Dr. Sledge—including the surgery. *See Turner v. Chesapeake & Potomac Tel. Co.*, 16 BRBS 255, 257–58 (1984) (holding that a claimant establishes a *prima facie* case for compensable medical treatment where a qualified physician indicates treatment was necessary for a work-related condition). Finally, he concluded that, based on the medical evidence, the surgery and other further medical treatment recommended by Dr. Sledge,[2] were reasonable and necessary.

---

[2] Dr. Sledge also recommended an epidural steroid injection to assist him with identifying and isolating the source of the pain, which would ultimately help limit the scope of the surgery.

No. 14-60707

In sum, the ALJ awarded Courville: (1) temporary total disability benefits from February 2007 through January 3, 2011; (2) ongoing temporary partial disability benefits beginning January 4, 2011; (3) all reasonable and necessary medical expenses arising from the work-related injury including the epidural steroid injection and surgery recommended by Dr. Sledge; and (4) attorney's fees.

The BRB affirmed the ALJ's order, concluding that it was supported by substantial evidence in the record and in accordance with the law. This petition for review followed.

## II.     Standard of Review

"Our review of the BRB's decision is limited in scope to considering errors of law, and making certain that the BRB adhered to its statutory standard of review of factual determinations, that is, whether the ALJ's findings of fact are supported by substantial evidence and are consistent with the law." *Coastal Prod. Servs. Inc. v. Hudson*, 555 F.3d 426, 430 (5th Cir. 2009) (alterations, internal quotation marks, and citation omitted). The BRB must "accept the findings of the ALJ if they are rational and supported by substantial evidence in the record considered as a whole." *Gulf Best Elec., Inc. v. Methe*, 396 F.3d 601, 603 (5th Cir. 2004) (citation omitted). "Substantial evidence is that relevant evidence—more than a scintilla but less than a preponderance—that would cause a reasonable person to accept the fact finding." *Coastal Prod. Servs. Inc.*, 555 F.3d at 430 (internal quotation marks omitted). As the factfinder, the ALJ "is exclusively entitled to assess both the weight of the evidence and the credibility of witnesses." *Ceres Gulf, Inc. v. Dir., Office of Worker's Comp. Programs*, 683 F.3d 225, 228 (5th Cir. 2012) (citations omitted). "The BRB may not substitute its judgment for that of the ALJ or engage in a *de novo* review of the evidence." *Gulf Best Elec.*, 396 F.3d at 603

(citation omitted).  We review the BRB's legal conclusions de novo.  *Coastal Prod. Servs. Inc.*, 555 F.3d at 430.

### III.  Analysis

Under 33 U.S.C. § 907, "[o]nce an employee establishes that his injury was work-related, he is entitled to all reasonable and necessary medical expenses related to that injury." *Amerada Hess Corp. v. Dir., Office of Worker's Comp. Programs*, 543 F.3d 755, 761 (5th Cir. 2008) (citing 33 U.S.C. § 907).  It is undisputed that Courville's spine injury was work-related.  The dispute in this appeal involves the ALJ's conclusion that the recommended surgery is "reasonable and necessary" treatment for Courville's injury.  "[A] claimant establishes a *prima facie* case for compensable medical treatment where a qualified physician indicates that such treatment is necessary for a work-related condition." *Id.* at 762.

Petitioners assert that the ALJ erred in weighing the evidence and misstated the law with regard to his discretion to assess the weight of the evidence.[3] Having reviewed the record, we hold that the BRB correctly found that the ALJ's factual findings were supported by substantial evidence and that the ALJ did not misstate the law.  Dr. Cobb, Courville's first treating physician, recommended surgical intervention involving spinal fusion.  Dr. Lindemann—a physician hired by Petron—agreed and concluded that "Courville will more likely than not require surgical intervention" and referred Courville to a spine specialist for further evaluation.  Finally, Dr. Sledge, Courville's second treating physician, testified that he agreed with the assessments of Drs. Cobb and Lindemann regarding surgical intervention.

---

[3] In their reply brief, Petitioners assert a third argument related to the ALJ's authority to direct open-ended future treatment. We decline to address this argument, as "[w]e generally do not consider arguments made for the first time in a reply brief and deem [such] arguments waived." *United States v. Myers*, 772 F.3d 213, 218 (5th Cir. 2014).

No. 14-60707

Additionally, the physicians recommending surgery only did so after attempting numerous alternative methods of treatment, none of which proved successful.

While it is true, as the ALJ acknowledged, that at least two other doctors opined that surgical intervention was not necessary, this court has consistently held that the ALJ, as the factfinder, "is exclusively entitled to assess both the weight of the evidence and the credibility of witnesses." *Ceres Gulf, Inc.*, 683 F.3d at 228 (citations omitted). Moreover, the ALJ was within his discretion to lend greater weight to the opinions of Courville's treating physicians—who are familiar with his injuries, treatment, and responses—than the opinions of his non-treating physicians. *See Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985); *see also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citations omitted) ("[O]pinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability.").

It has now been over eight years since Courville suffered a work-related injury during his employment with Petron. Courville's first treating physician's recommendation for surgery has been pending for over six years now. As recently as 2013, Courville's second treating physician agreed with the recommendation of surgical intervention. To date, Courville has been evaluated by at least seven different physicians and has undergone years of alternative treatments to no avail. In light of these facts and considering the record evidence as a whole, we see no error in the ALJ's finding that surgical intervention is both reasonable and necessary. *See Amerada Hess Corp.*, 543 F.3d at 761 (citing 33 U.S.C. § 907).

Accordingly, we hold that the BRB properly affirmed the ALJ's Decision and Order which was supported by substantial evidence in the record and

No. 14-60707

consistent with the law. *See Coastal Prod. Servs. Inc.*, 555 F.3d at 430 (citation omitted).

## IV. Conclusion

For the foregoing reasons, the petition for review of the decision and order of the Benefits Review Board is DENIED.