# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 4, 2012

No. 11-60456

Lyle W. Cayce
Clerk

CERES GULF, INCORPORATED

Petitioner

v.

DIRECTOR, OFFICE OF WORKER'S COMPENSATION
PROGRAMS, U.S. DEPARTMENT OF LABOR;
NORRIS PLAISANCE, SR.,

Respondents

Petition for Review of an Order of the
Benefits Review Board

Before JONES, Chief Judge, and PRADO and SOUTHWICK, Circuit Judges.
EDITH H. JONES, Chief Judge:

Ceres Gulf, former employer of retired longshoreman Norris Plaisance, Jr., challenges a Benefits Review Board ("BRB") decision that overruled an Administrative Law Judge ("ALJ") twice and held Ceres Gulf liable for Plaisance's hearing loss. Because the BRB initially applied the wrong legal test and standard of review to the ALJ's decision, we REVERSE.

## I. Background

Plaisance ("Claimant") worked as a longshoreman for various employers beginning in the 1950s and for Ceres Gulf ("Petitioner") from 1982 until he

No. 11-60456

retired in 1988. He noticed an initial hearing loss in 1976, for which he obtained hearing aids. After retiring, he was diagnosed with both conductive and sensorineural hearing loss.[1] In March 2006 he filed a claim against Ceres Gulf, his last maritime employer, pursuant to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §901 *et seq.* ("LHWCA").

In his initial decision and order, the ALJ found in favor of the employer. He concluded that the Claimant provided evidence sufficient to invoke the presumption of causation under Section 20(a) of the LHWCA, 33 U.S.C. §920(a) ("In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary . . . [t]hat the claim comes within the provisions of this chapter.") (the "Section 20(a) presumption"). Nevertheless, he held that the employer rebutted the presumption by substantial evidence, and he found based on the record as a whole that the employer's workplace was not the cause of Claimant's injury.

On appeal, the Benefits Review Board ("BRB") vacated and remanded for further consideration. It held that some of the evidence relied on by the ALJ to satisfy the "substantial evidence" standard could not, as a matter of law, contribute to rebutting the presumption. It first excluded the expert opinion of Dr. Irwin, who stated that the relationship between the sensorineural hearing loss and Claimant's noise exposure was possible but not definite because of potential exogenous causes. The BRB concluded that these statements could not establish rebuttal in light of the aggravation rule, which holds that even if employment combined with other preexisting causes of the loss, the entire

---

[1] "Conductive hearing loss" describes a problem conducting sound waves through the ear system. *See* American Speech-Language-Hearing Association, "Conductive Hearing Loss," available at http://www.asha.org/public/hearing/conductive-Hearing-Loss/. "Sensorineural hearing loss" describes inability of the nerve of the inner ear or of the processing centers of the brain to process the sound waves transmitted through the ear system. *See* American Speech-Language-Hearing Association, "Sensorineural Hearing Loss," available at http://www.asha.org/public/hearing/Sensorineural-Hearing-Loss/.

No. 11-60456

disability is compensable. *See, e.g.*, *Strachan Shipping v. Nash*, 782 F.2d 513, 517 (5th Cir. 1986) (en banc) ("[W]here an employment injury worsens or combines with a preexisting impairment to produce a disability greater than that which would have resulted from the employment injury alone, the entire resulting disability is compensable.") (citations omitted).

Second, the BRB excluded two of the bases for the opinion of the employer's expert, Dr. Seidemann:  the use of sound level surveys and generalized population information regarding hearing loss.  Dr. Seidemann opined that the plaintiff exhibited a mixed-use hearing loss, comprising both a mild sensorineural hearing loss and a more severe bilateral conductive hearing loss, the latter of which could not possibly have been caused by noise exposure.[2] He also concluded that while sensorineural hearing loss *can* be caused by noise exposure, this Claimant's sensorineural hearing loss was not *actually* caused by noise exposure, because Claimant's hearing was better than average for someone his age and because the doctor's noise studies performed in various longshore environments did not reveal noise levels high enough  to cause hearing loss.

The first basis, the BRB wrote, could not constitute evidence against the presumption because the hearing capacity of the average person of Claimant's age was logically unrelated to whether Claimant's present hearing loss was caused, aggravated, or contributed to by his employment.  An employer takes his employee as he finds him, even if that employee enjoys unusual hardiness or frailty. *See Gooden v. Dir.*, *Office of Worker's Comp.,* 135 F.3d 1066, 1069 (5th Cir. 1998), *quoting Southern Stevedoring Co. v. Henderson*, 175 F.2d 863, 866 (5th Cir. 1949) ("There is no standard or normal man who alone is entitled to workmen's compensation.").

---

[2] The undisputed evidence is that a significant portion of Plaisance's hearing loss was caused by otosclerosis, a bony growth in his ear that could not have arisen from his employment.

3

No. 11-60456

The BRB also rejected the second basis for Dr. Seidemann's opinion—his noise studies in different longshore environments—as rebuttal of the Section 20(a) presumption. The ALJ had found that there was evidence sufficient to invoke the Section 20(a) presumption that noise levels in Claimant's work environment caused hearing loss.  That finding was not challenged on appeal. According to the BRB, paraphrasing *New Orleans Stevedores v. Ibos*, 317 F.3d 480, 485 (5th Cir. 2003), it therefore fell to the employer to "demonstrate . . . that exposure to injurious stimuli did not cause the employee's occupational disease . . . ." Evidence from other longshore facilities was held irrelevant to rebut the Claimant's testimony concerning his exposure.  The BRB remanded for consideration whether the employer had rebutted the presumption by substantial evidence, absent these three impermissible bits of evidence.

On remand, the ALJ concluded that without this evidence the employer had failed to rebut the presumption of compensability.  The sole remaining ground for Dr. Seidemann's conclusion was that Claimant's non-work-related otosclerosis functioned as a built-in earplug that may have served as a hearing protector, reducing the impact of workplace noise-exposure.  In the ALJ's judgment, this was not alone substantial evidence against the presumption. The ALJ therefore held that Claimant suffered work-related hearing loss during employment with Petitioner.  He found only an 8.4% binaural hearing loss compensable.  Because Claimant had not shown that his non-work-related hearing loss predated his work with the Employer, that condition could not have been "aggravated" during employment.

In its second opinion, the BRB affirmed the ALJ's revised finding of compensable injury.  However, it held that the ALJ erred in holding that Claimant must prove that his conductive hearing loss pre-existed his work-related hearing loss.  The BRB placed the burden on the employer to provide substantial evidence that it did not.  It held that in view of the Section 20(a)

No.  11-60456

presumption, the entire hearing impairment was work-related, and the employer failed to produce substantial evidence that some portion of the disability was due to an intervening cause post-dating the work injury.  Ceres Gulf was accordingly held liable for the Claimant's total 80.8% hearing loss.

On appeal, Ceres Gulf challenges the BRB's exclusion in its first decision of the two bases for Dr. Seidemann's opinion and the BRB's conclusion in its second decision that the amount of compensable hearing loss was 80.8%.

## II. Discussion

The critical initial issue on appeal is whether the BRB properly required the ALJ to disregard a substantial portion of the reasoning used by Dr. Seidemann to support his opinion that Plaisance's hearing loss was not caused by his longshore work at Ceres Gulf.  To evaluate this holding, we restate the fundamentals governing both this court's and the BRB's review of ALJ compensation decisions.

"This court . . . reviews decisions by the BRB to determine whether it has adhered to its proper scope of review—*i.e.*, whether the ALJ's findings of fact are supported by substantial evidence and are consistent with the law." *Gulf Best Elec., Inc. v. Methe*, 396 F.3d 601, 603 (5th Cir. 2004).  The BRB, in turn, is bound  by the LHWCA to uphold the factual findings of the ALJ if they are supported by substantial evidence.  33 U.S.C. § 921(b)(3).  Substantial evidence is "that relevant evidence—more than a scintilla but less than a preponderance—that would cause a reasonable person to accept the fact finding." *Coastal Prod. Svc., Inc. v. Hudson*, 555 F.3d 426, 430 (5th Cir. 2009).  The ALJ is thus the factfinder who is exclusively entitled to assess both the weight of the evidence and the credibility of witnesses. *Mendoza v. Marine Pers. Co.*, 46 F.3d 498, 500 (5th Cir. 1995); *La. Ins. Gty. Assn. v. Director*, 614 F.3d 179, 185 (5th Cir. 2010); *Avondale Indust. v. Dir., Office of Worker's Comp.*, 977 F.2d 186, 189 (5th Cir. 1992).

No.  11-60456

The LHWCA further specifies the order of proof in compensation cases, providing that "[in] any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary . . .[t]hat the claim comes within the provisions of this chapter." 33 U.S.C. § 920(a).  To invoke the presumption, a Claimant must offer a prima facie case that he (1) suffered a harm, and (2) a workplace condition may have been responsible for or aggravated the harm. *Conoco, Inc., v. Dir., Office of Worker's Comp.*,  194 F.3d 684, 687 (5th Cir. 1999). When the presumption is invoked, as it may be solely by a Claimant's testimony, "the burden shifts to the employer to rebut it through facts—not mere speculation—that the harm was *not* work-related."  *Id*. (omitting citation).  If the presumption is rebutted by the employer, the ALJ is then obliged to weigh all of the evidence of record to determine whether the injury arose out of the Claimant's employment.  *Del Vecchio v. Bowers*, 296 U.S. 280, 286-87, 56 S. Ct. 190, 193 (1935).  The employee retains the burden of persuasion.

The ALJ's 24-page, single space opinion faithfully followed these rules.  It relied on the Claimant's testimony and two expert opinions to find that Plaisance suffered a hearing loss and his workplace could have manifested injurious noise exposure.  On this basis, the Section 20(a) presumption was invoked.  The ALJ then found that the testimony of Dr. Seidemann was sufficient to rebut the presumption of causation "and return to the Claimant the burden of proof on that question."  Reviewing the record as a whole, the ALJ credited Dr. Seidemann's background, credentials and opinion over those of Plaisance's retained expert Dr. Bode.  The ALJ also evaluated the testimony of the "neutral" expert Dr. Irwin, who was found to be most credible but who equivocated on whether Claimant's "work for Employer [was] or [was not] a cause or contributing factor in his sensorineural hearing loss."  Thus, the ALJ concluded, Plaisance had not met his burden on the record as a whole.

6

No. 11-60456

The BRB did not state that the ALJ applied an incorrect standard to the proof before him; the Board purported to rely on the above standards nearly verbatim. However, it placed on Ceres Gulf the burden to rebut the Section 20(a) presumption with evidence sufficient "to *demonstrate the absence* of a work-related injury incurred over the course of the employee's employment" (emphasis added). In a footnote, the Board held that once the presumption is invoked, the burden shifts to an employer to "demonstrate" "that exposure to injurious stimuli did not cause the employee's occupational disease . . ." (citing *Ibos*, 317 F.3d at 485). The BRB then held inadmissible Dr. Seidemann's reliance on noise studies conducted in comparable workplace environments and his comparison of Plaisance's hearing with that of his peer age group. Such evidence, it held, "cannot form a proper foundation for his opinion that claimant's current hearing loss is unrelated to his exposure to noise while working for [the] employer[.]"

We interpret the BRB opinion as falling short legally in several respects. First, the Board impermissibly placed a thumb on the evidentiary scale by arbitrarily declaring portions of Dr. Seidemann's testimony inadmissible. Under the statute, the ALJ, not the BRB, was entitled to assess the relevance and credibility of testimony, including expert testimony. "[T]he ALJ's decision need not constitute the sole inference that can be drawn from the facts. . . . As fact finder, the ALJ determines questions of credibility of witnesses and of conflicting evidence." *Avondale*, *supra*, 977 F.2d at 189. Dr. Seidemann's credentials and experience in audiology were unimpeachable.[3] That he considered it scientifically reasonable to compare the noise levels Plaisance likely experienced

---

[3] Dr. Seidmann is among only 10% of audiologists with a doctorate degree. Among other things, he has been in the profession over thirty years, has taught at Louisiana State University ("LSU"), Tulane School of Medicine and LSU Medical Center, achieving the rank of full professor, and has been an editorial consultant for five professional journals including the Journal of Occupational Hearing Loss.

with studies at other comparable longshore facilities was certainly relevant, whether or not alone determinative, of the issue of workplace causation.

The BRB relied on its own previous decision in *Everson v. Stevedoring Services of America*, 33 BRBS 149 (Ben. Rev. Bd. 1999), which upheld an ALJ's finding that noise surveys were insufficiently substantial evidence to rebut the Section 20(a) presumption.  In that case, however, the administrative decisions were based not on the legal irrelevance of the noise level surveys, but on the *sufficiency* of noise level surveys that were produced under materially different working conditions. Appellee points to *Damiano v. Global Terminal & Container Serv.*, 32 BRBS 261 (Ben. Rev. Bd. 1998), where the BRB upheld an ALJ's rejection of noise-level surveys as insufficient evidence to rebut the presumption. Here, too, the ALJ had found the noise-level surveys *relevant* rebuttal evidence, even though he found them insufficient to rebut the presumption in light of the fact that the noise-level surveys at issue there tended to demonstrate compliance with OSHA standards of 90 air-weighted decibels, but the ALJ concluded the injury could have occurred at lower decibel levels. *Id.*

That the BRB has itself considered noise level surveys in the past demonstrates their relevance.  Their use by Dr. Seidemann goes to the weight, not the admissibility, of the surveys, and the weighing was exclusively under the ALJ's control.

The BRB also erroneously excluded a comparison between the degree of hearing loss exhibited by Plaisance and the hearing loss of his peers as irrelevant to determining causation.  Dr. Seidemann testified that "[i]f we were to look at the normal aging process, we would expect an 80-year-old to have hearing worse than [Claimant's], just on the basis of normal aging alone." *Simply* the observation that Claimant's hearing is better than the average person of his age might not be relevant, because a Claimant is taken as he is found, and there is no evidence regarding whether, if he began with better-than

No. 11-60456

average hearing, any loss from injury would still be compensable. *See Gooden*, 135 F.3d at 1069 (Employer takes employee as he finds him.).

If Dr. Seidemann's statement was offered as evidence that an injured Claimant had nothing to complain about, since despite injury, his hearing was still better than expected for a person of his age, it would be inapposite. But the statement, taken in context, was actually intended as an alternative explanation of causation: Claimant's hearing loss may have been caused by the normal process of aging. For this, the loss of hearing that would typically be expected of someone of Claimant's age (80 years old) is relevant. Indeed, the ALJ specifically mentioned that Dr. Irwin cited aging as a possible cause of sensorineural hearing loss, and combined this with Dr. Seidemann's observation regarding Claimant to conclude that the employer had provided "substantial evidence" to rebut the presumption of causation. Here, again, BRB had no basis to exclude the testimony, as such decision lay within the ALJ's province as factfinder.

The Board was required to consider all of this evidence for an additional reason. The Board evidently raised the employer's burden of rebutting the Section 20(a) presumption from that of simply adducing "substantial evidence" to the more onerous task of disproving the Claimant's prima facie case. Thus, the Board states that the employer must "demonstrate" the absence of causation or a work-related injury. Plaisance's brief is even more emphatic that the presumption must be rebutted with specific and comprehensive medical evidence "proving the absence" or "severing the connection" between the harm and the employment. This court has explicitly held, however, that the BRB may not adopt standards requiring employers' rebuttal evidence to "rule out," "unequivocally state," or "affirmatively state" their positions to the exclusion of the plaintiff's case. *See Conoco*, *supra* 194 F.3d at 690. In *Ortco Contractors, Inc., v Charpentier*, 332 F.3d 283, 287 (5th Cir. 2003), the court stated the

reason for this holding: "We have repeatedly held that this evidentiary standard [substantial evidence] is *less* demanding than the ordinary civil requirement that a party prove a fact by a preponderance of evidence."[4]  And in *Conoco*, on which *Ortco* heavily relied, the court stated, "To place a higher standard [than substantial evidence] on the employer is contrary to statute and case law." *Conoco*, 194 F.3d at 690.  The Board's "demonstrate" requirement heightens the substantial evidence standard by making the employer prove the deficiency in the Claimant's prima facie case, when all it must do is advance evidence to throw factual doubt on the prima facie case.  Having  produced substantial evidence, the employer then casts the duty on the ALJ to weigh all the record evidence.  As *Ortco* also noted, the "only effect of a presumption is to shift [the] burden of producing evidence to challenge the presumed fact." *Ortco*, 194 F.3d at 691 (citing *Pennzoil Co. v. FERC*, 789 F.2d 1128 (5th Cir. 1986)).  Put otherwise, this court has articulated the working of the Section 20(a) presumption as follows:

> To rebut this presumption of causation, the employer was required to present *substantial evidence* that the injury was not caused by the employment.  When an employer offers sufficient evidence to rebut the presumption–the kind of evidence a reasonable mind might accept as adequate to support a conclusion–only then is the presumption overcome; once the presumption is rebutted it no longer affects the outcome of the case.

*Noble Drilling v. Drake*, 795 F.2d 478, 481 (5th Cir. 1986) (emphasis added) (internal citations omitted).

To the extent the Board implicitly or explicitly relied on this court's characterization, in *Ibos*, 317 F.3d at 485,  of the employer's burden to rebut the presumption of compensability with "proof" that "exposure to injurious stimuli did not cause the employee's occupational disease," it erred.  First, *Ibos* is an

---

[4] *E.g.,  Avondale Shipyards*, 914 F.2d 88, 91 (5th Cir. 1990).

asbestos case in which the job-related nature of the disease was not contested.  The court's statement was *dicta* as to the causation inquiry.  Second, the major issue in *Ibos* was the last-employer rule, which is not disputed here.  Third, although the last employer rule is common to occupational disease and hearing loss claims under the LHWCA,  there is no reason why the substantial evidence required for an employer's rebuttal of the Section 20(a) presumption should differ in hearing loss cases from the injuries at issue in *Ortco* (heart attack) or *Conoco* (shoulder injuries), as questions of multiple causation can arise in such instances.  *See Avondale Indust.*, *supra* 977 F.2d 186, 190 (hearing loss case where last employer rule, but not employment-related causation, was disputed).  Occupational diseases, on the other hand, are governed by a separate prong of the LHWCA's definition of "injury" that does not include hearing loss; they are notable for their much closer and sometimes unique connection with the workplace.  That the employer might have to adduce more evidence to rebut a plaintiff's prima facie case of occupational disease would not be surprising (although it facially appears incongruous with the statute).  *See* 33 U.S.C. § 902(2).

Disregarding the BRB's errors, we finally evaluate whether substantial evidence supported the ALJ's initial decision denying compensation on the record as a whole.  Although another factfinder might have reached a different conclusion, the ALJ thoroughly explained his reasons in this disputed case.  Even the Claimant declines to place much weight on his own medical expert, whose testimony was impeached.  The neutral expert Dr. Irwin's testimony was too neutral to support compensability.  Dr. Seidemann's testimony, in contrast, thoroughly grounded in the facts of the case, was comprehensive, direct and unequivocal that work-related noise did not cause the Claimant's sensorineural hearing loss.  He relied in part on representative longshore noise studies he had conducted and on studies performed for OSHA.  He also relied on the earplug

effect created by Plaisance's otosclerosis, which lessened his sensorineural deterioration. He supported his conclusion that Plaisance's relevant hearing tests showed his sensorineural hearing is better than 80-year-old peers who were not exposed to occupational or recreational noise. Further, the fact that Claimant's hearing continued to decline after he stopped working implied a non-work-related cause of his problem. The ALJ's determination that Claimant failed to prove causation by a preponderance of the evidence is supported by substantial evidence.

### III. Conclusion

For all these reasons, the Board erred in rejecting Dr. Seidemann's evidence in part and in then rejecting the ALJ's first conclusion based on his evaluation of the evidence. We need not reach the aggravation rule issue raised by Ceres Gulf. The Board erred in excluding Dr. Seidemann's noise-level surveys, because those surveys are relevant to the question whether potentially harmful working conditions existed that could have caused Claimant's harm. It erred when it excluded Dr. Seidemann's comparison of Claimant's hearing to the typical person of his age, because this was offered as part of Dr. Seidemann's explanation that aging was a more likely cause of Claimant's particular type of hearing loss, which is clearly relevant to determine what caused Claimant's hearing loss. The ALJ properly considered both of these evidentiary bases as rebuttal to the Section 20(a) presumption. The decision of the Benefits Review Board is **REVERSED**, and the first decision of the Administrative Law Judge is reinstated.