# United States Court of Appeals
## For the First Circuit

No. 14-2323

UNITED STATES OF AMERICA,

Plaintiff, Appellee,

v.

URBAN LOT ST G 103, GUAYAMA AND OTHER ASSETS,

Defendants in Rem,

MYRNA RIVERA-ORTIZ and ENRIQUE RODRÍGUEZ-NARVÁEZ,

Claimants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Lynch, Selya and Lipez,
Circuit Judges.

Enrique J. Mendoza Méndez and Mendoza Law Offices on brief for appellants.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Tiffany V. Monrose, Assistant United States Attorney, on brief for appellee.

March 14, 2016

**SELYA**, **Circuit Judge**. The underlying case is one for civil forfeiture arising in the aftermath of a 1993 criminal prosecution mounted in the United States District Court for the Southern District of New York. There, a federal grand jury indicted claimant-appellant Enrique Rodríguez-Narváez on drug-trafficking and money laundering charges.[1]

In due course, the appellant entered a guilty plea to a single count charging money laundering violations. The other counts were dismissed, and the district court sentenced the appellant. As part of his plea agreement in the criminal case, the appellant agreed to litigate all forfeiture issues related to the criminal charges in the District of Puerto Rico (where a forfeiture action already had been instituted).

The government had filed its forfeiture action in the United States District Court for the District of Puerto Rico on March 26, 1993. In that action, the government asserted that several parcels of real estate and the appellant's interests in certain businesses were forfeitable, but it did not mention any interest of the appellant in a professional basketball team called Los Brujos of Guayama (the Franchise). After some skirmishing (not relevant here), the parties reached a settlement. The

---

[1] Rodríguez-Narváez's spouse, Myrna Rivera-Ortiz, appears as an additional claimant and appellant. For ease in exposition, we treat Rodríguez-Narváez as if he were the lone claimant and appellant.

settlement agreement did not focus on, or even mention, the Franchise. The Puerto Rico district court approved the settlement on September 30, 1996, and the government agreed "to release and return to [the claimants] all their personal properties that were seized during the present case."

Years of procedural wrangling followed. Eventually (in June of 2005), the appellant filed the last in a series of motions for execution of judgment, seeking compensation for the government's alleged seizure of the Franchise ancillary to the criminal case. The government objected, arguing (among other things) that it had never seized the Franchise. The district court conducted an evidentiary hearing (taking testimony on two different days) and denied the appellant's motion in an unpublished order. This timely appeal ensued.

In this venue, the appellant claims that he owned an interest in the Franchise; that the government seized that interest; and that he is entitled to compensation because the government failed to return the confiscated property to him. The government does not challenge the first of these claims, but it denies that it ever seized the appellant's interest in the Franchise and, accordingly, it also denies that any compensation is due.

The docket in the criminal case is illuminating. It shows that, while the criminal case was pending, the government

sought to preserve, as a potentially forfeitable asset, the appellant's interest in the Franchise. At the government's request, the New York district court, on June 28, 1993, issued a post-indictment restraining order prohibiting the appellant from having any contact with, or influence over, the Franchise. However, the restraining order specifically permitted the Franchise to remain in operation.

The government subsequently determined that it was inadvisable to attempt to preserve the appellant's interest in the Franchise for potential forfeiture. Thus, at the government's instance, the court released both the Franchise and the appellant's interest therein from the restraining order on August 27, 1997.

We find nothing in the court records (or elsewhere, for that matter) to suggest that the government seized the Franchise when it obtained the restraining order from the New York district court. Though that order effectively prevented the appellant from participating in the affairs of the Franchise, it did not divest him of his proprietary interest. Rather, the order — in pertinent part — merely sought to ensure the availability of property (the appellant's interest in the Franchise) pending disposition of the criminal charges. See United States v. Monsanto, 491 U.S. 600, 613 (1989). A seizure is "some meaningful interference with an individual's possessory interests in [the designated] property," United States v. Jacobsen, 466 U.S. 109, 113 (1984), and no seizure

occurred here. To the contrary, the restraining order was carefully drawn to separate the appellant from, but not deprive him of, the Franchise.

By like token, the subsequent forfeiture action does not furnish a basis for the appellant's claim that the Franchise was seized. The complaint in that action did not refer, directly or indirectly, to the Franchise; and the settlement agreement in the forfeiture action did not include the Franchise.

If more were needed — and we do not think that it is — the district court wisely conducted an evidentiary hearing. The court found that the Franchise belonged to the league, not to any individual, and that the appellant was merely the holder of the Franchise. We review that finding for clear error. See United States v. Guzman, 282 F.3d 56, 58 (1st Cir. 2002). In doing so, we remain mindful that findings of fact are not clearly erroneous unless, after reviewing them, we are left with the abiding conviction that a mistake has been made. See United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); Fed. Refin. Co., Inc. v. Klock, 352 F.3d 16, 27 (1st Cir. 2003). Measured against this benchmark, the district court's finding is not clearly erroneous.

In an effort to blunt the force of this logic, the appellant suggests that he is entitled to lost Franchise profits

for the period when the restraining order was in effect.[2]  This suggestion is groundless.

The district court's findings of fact defenestrate this claim.  The court supportably found that, throughout the pendency of the restraining order, the Franchise was in substantial debt. There were, then, no profits to be lost.

The appellant tries to undermine these findings by noting that paragraph 4(c) of the restraining order authorized the United States Marshals Service (USMS) to "[o]pen a holding account into which all profits of the operation of the FRANCHISE shall be deposited [and] held in escrow pending the disposition of the criminal and forfeiture proceedings."  This initiative falls flat: the district court supportably found that, regardless of the authorization, "[n]o profits were ever deposited in any account because the Government recognized that the basketball franchise was in substantial debt."  In making this finding, the court credited the testimony of a government official that the USMS never took any substantial action with respect to the Franchise. Accepting this testimony, the court made a credibility determination, and we will not normally disturb the factfinder's

_____

[2] The government argues that the claim for lost profits is stillborn because it should have been brought in the forum where the restraining order was issued (New York) rather than in Puerto Rico.  Because the claim fails on the merits, we bypass this procedural riposte.  See, e.g., Royal Siam Corp. v. Chertoff, 484 F.3d 139, 144 (1st Cir. 2007).

credibility choices.  See United States v. Laine, 270 F.3d 71, 75 (1st Cir. 2001).  We have no reason to do so here.

We need go no further.  To paraphrase the able district judge, "a party cannot be ordered to return property that the party never possessed."

**Affirmed.**