# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-60219

United States Court of Appeals
Fifth Circuit

**FILED**

February 26, 2019

Lyle W. Cayce
Clerk

DARRELL BOUDREAUX,

      Petitioner

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR; WILKINSON
TECHNOLOGIES; AMERICAN INTERSTATE INSURANCE COMPANY,

      Respondents

Petition for Review of an Order of the
Benefits Review Board
BRB No. 17-0487

Before STEWART, Chief Judge, and SOUTHWICK and ENGELHARDT,
Circuit Judges.

PER CURIAM:*

Darrell Boudreaux filed this petition for review seeking reversal of the
Benefits Review Board's ("the Board") order affirming the decision of the
Administrative Law Judge ("ALJ") denying Boudreaux's claim for benefits
against his employer under the Longshore and Harbor Workers' Compensation
Act ("the Act"), 33 U.S.C. §§ 901–950. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 18-60219

## I. Factual & Procedural Background

In August of 2012, Boudreaux became employed as a rigger for Wilkinson Technologies ("Wilkinson"). He filled out a medical history questionnaire and indicated that he did not have any long-term health problems or physical conditions. He did not respond to the question on the form inquiring as to whether he had ever had surgery.

On October 9, 2013, Boudreaux was working on a vessel named the M/V MS MEGAN. Early that morning at approximately 4:00 a.m., Boudreaux was riding in a personnel basket that was being lifted by a crane over the vessel when he fell out of the basket onto the vessel's platform. The record reflects that he fell a distance of about two or three feet. At the time, there was another employee riding in the basket across from Boudreaux and several witnesses to the incident. Witnesses reported that Boudreaux immediately stood up and walked away after the fall. He then filled out an accident report. He was seen by medical staff and complained of knee and shoulder pain. He explained that he twisted his knee while falling out of the basket. He disclosed at that time that he previously had knee surgery. He was given Aleve and cleared to return to work.

On October 10, he was given a drug test and tested positive for amphetamines and cocaine. Because he did not return to work after the incident, he was terminated in November of 2013.[1] According to Boudreaux, when he fell out of the personnel basket, he sustained a knee injury that aggravated his preexisting knee condition. He now claims he is in need of a total knee replacement.

---

[1] The record indicates that Boudreaux made one very brief attempt to return to work on light duty but was unsuccessful and did not attempt to work again after that point.

2

No. 18-60219

Boudreaux filed a claim for benefits under the Act[2] against Wilkinson and the case was referred to the ALJ for hearings in March and October of 2016. During the second hearing in October, both parties were given an opportunity to call and cross-examine witnesses, offer exhibits, present arguments, and submit post-hearing briefs. The ALJ issued a ruling in April of 2017, denying Boudreaux's claims for benefits. In his decision and order, the ALJ explained that Boudreaux failed to carry his burden of proving by a preponderance of the evidence that the October 2013 fall aggravated his preexisting knee injury. Boudreaux appealed to the Board who affirmed the ALJ's Decision and Order.[3] Boudreaux then filed this petition for review.

## II. Standard of Review

"We review decisions by the [Board] only to determine whether it adhered to the proper scope of review—whether the ALJ's findings were supported by substantial evidence and were consistent with the law." *Ramsay Scarlett & Co. v. Dir., Office of Workers' Comp. Programs*, 806 F.3d 327, 330 (5th Cir. 2015) (citing *Ceres Gulf, Inc. v. Dir., Office of Worker's Comp. Programs*, 683 F.3d 225, 228 (5th Cir. 2012)). "Substantial evidence is 'that relevant evidence—more than a scintilla but less than a preponderance—that would cause a reasonable person to accept the fact finding.'" *Id.* The ALJ is the sole fact finder and makes all credibility determinations. *Id.*

---

[2] 33 U.S.C. §§ 901–950.

[3] The record shows that Wilkinson agreed to pay Boudreaux benefits under the Act in exchange for his dismissal of his Jones Act claims against Wilkinson. According to Wilkinson, although it did briefly pay Boudreaux benefits, it ceased paying after Dr. John Budden was deposed and opined that Boudreaux would have needed a total knee replacement irrespective of the October 2013 fall. The ALJ concluded, and the Board agreed, that Wilkinson reserved all defenses under the Longshore Act, which governed Boudreaux's remaining claims against Wilkinson. We do not disturb this conclusion on appeal.

No. 18-60219

## III. Discussion

Under the Act, a claimant can establish "a prima facie case for coverage by showing that (1) a harm occurred and (2) the harm may have been caused or aggravated by a workplace condition." *Id.* If the claimant meets these two requirements, a presumption arises that the claim falls under the Act. *Id.* (citing 33 U.S.C. § 920(a)). The burden then shifts to the employer to rebut the presumption "through facts" showing that the harm was not work-related. *Id.* at 331. "If the ALJ finds that the employer rebutted the presumption, then the ALJ must weigh all of the evidence to determine whether the harm was caused by the claimant's employment at the covered situs." *Id.*

In the proceedings below, the ALJ first acknowledged, and neither party disputed, that Boudreaux "had a significant pre-existing condition in his right knee." The ALJ based this finding on the numerous medical records and medical expert testimony presented at the hearing. The ALJ then reasoned that, under the Act, Boudreaux would have to show that his preexisting knee condition was aggravated by the October 2013 incident. *See* 33 U.S.C. § 920.

Boudreaux testified at the hearing and explained that as he was being lifted in the basket, it caught the guard rail causing the rope to slack which caused him to lose his grip. His right leg and foot then slipped and he fell out of the basket. He stated that he broke his fall with his hand and arm but his knee hit the deck. The ALJ also examined the written statements and depositions of multiple witnesses to the accident, most of whom agreed that the basket did not hit anything but that one of the riders fell out of the basket onto the deck. Wilkinson disputed that Boudreaux even fell from the personnel basket. The ALJ rejected this argument concluding that the "clear weight of the evidence is that [Boudreaux] did suffer a fall in or from the personnel basket."

4

No. 18-60219

The ALJ also rejected Wilkinson's argument that the cause of the fall was Boudreaux's intoxication. Boudreaux testified at the hearing that he had last used cocaine in early September of 2013 with a stripper and some friends in a hotel. Earlier when he was deposed, however, Boudreaux stated that he had last used cocaine during the three-day break just prior to the October 9, 2013 fall. At the hearing, he disclaimed his prior deposition testimony but also admitted to drinking and using cocaine in the past, though he could not remember specific dates. William George, a toxicologist and pharmacologist, testified at the hearing that the positive drug test results indicated that Boudreaux had used cocaine within three days of the drug test given to him after the October 2013 incident. The ALJ accepted the positive drug test evidence but could not conclude that the "fall was solely due to [Boudreaux's] impairment," if he was impaired at the time of the fall.

The ALJ reasoned that Boudreaux fell either because his knee gave out, the basket struck the guardrail, or a combination of both and that the fall was in the scope and course of his employment. On this ground, the ALJ observed that Boudreaux benefited from the Act's presumption that the fall did aggravate his preexisting knee condition. *See* 33 U.S.C. § 920(a) ("In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary—(a) That the claim comes within the provisions of this chapter."). However, the ALJ then determined that Wilkinson had rebutted the § 920(a) presumption with substantial evidence to the contrary.

Introduced at the hearing were extensive medical records that reflected a long-standing medical history related to Boudreaux's knee condition. He had his first knee surgery in 1993, after a knee fracture, which left an 8-inch scar. He had another knee surgery in 2001. The medical records showed that he complained of sustaining multiple injuries to his knee between 1992 and 2013.

5

No. 18-60219

These alleged injuries include but are not limited to the following: (1) in 2003, he fell from an upper bunk and injured his knee; (2) in 2005, he fell from a height of twelve feet and injured his knee; (3) in 2006, he had a motorcycle accident and injured his knee; (4) while incarcerated in 2007, he slipped on some spilt milk and injured his knee; (5) in 2008, he had a motor vehicle accident and injured his knee; (6) in 2009 he went to the hospital complaining that his knee was popping in and out of place; (7) also in 2009 he fell down a flight of stairs and injured his knee; and (8) in 2010, he reported that he was involved in a motor vehicle accident and injured his knee.[4] The medical records also indicate a repeated and long-standing pattern of Boudreaux presenting to the hospital emergency room and various doctors' offices complaining of knee pain and asking for pain medication. The records also show that he claimed to have lost or misplaced his pain medication on several occasions and needed more. Nevertheless, in spite of his extensive medical history involving repeated knee injuries and complaints of knee pain, Boudreaux testified at the hearing before the ALJ that he had not had any real problems with his knee until the October 2013 fall while working for Wilkinson.

The ALJ also examined the testimony of three physicians. Dr. John Budden, Boudreaux's past treating physician,[5] explained that he originally opined that the 2013 fall aggravated Boudreaux's preexisting knee condition but that he based this opinion on Boudreaux's report that he had a history of being symptom free until the fall. Later, however, when Dr. Budden had access to Boudreaux's medical records and was able to see his full history of knee surgeries, repeated knee injuries, and complaints of pain followed by medical

---

[4] The record does not reflect that Boudreaux reported additional physical injuries for the years of 2011 and 2012.

[5] Dr. Budden treated Boudreaux for the first time in 1993 for a fracture to his right knee but, for reasons that are unclear from the record, did not see Boudreaux again as a patient until March of 2014.

treatments to his knee, he concluded that the 2013 fall did not accelerate any need for a knee replacement that he already had prior to the fall. Dr. Budden stated that "in light of the extensive history of trauma and pain it was unlikely that the fall aggravated [Boudreaux's] pre-existing knee condition." Dr. Richard Myer who examined Boudreaux's records only, agreed with Dr. Budden's conclusion that that 2013 fall did not aggravate the preexisting knee condition. Dr. Malcolm Stubbs, on the other hand, opined that Boudreaux's fall did appear to aggravate his preexisting knee condition but qualified his opinion on Boudreaux's self-report that his symptoms only increased after the fall.

The ALJ concluded that Boudreaux lacked credibility due to his failure to provide Drs. Budden and Stubbs with his full and accurate medical history. The ALJ further reasoned that Dr. Stubbs's opinion carried less probative value because it was based on Boudreaux's self-reporting that his knee symptoms increased only after the 2013 fall—a fact that was controverted by his medical history. The ALJ also took note of Boudreaux's inaccurate accounting of his cocaine use prior to the fall, which was contradicted by the drug test lab report and George's testimony. The ALJ observed that this discrepancy made him less reliable, regardless of whether it was caused by Boudreaux's deception or his poor memory. For these reasons, the ALJ determined that Boudreaux had failed to carry his burden of establishing by a preponderance of the evidence that the October 2013 fall aggravated his preexisting knee condition. *See Ceres Gulf*, 683 F.3d at 232 (noting that a claimant must "prove causation by a preponderance of the evidence").

On review, the Board held that the ALJ properly applied the Act's burden-shifting framework and relied on substantial evidence when making his findings. *See Ramsay Scarlett*, 806 F.3d at 331. We agree. As the Board noted, the ALJ's finding was rational that Boudreaux failed to carry his burden of establishing that the October 2013 fall aggravated his underlying knee

condition given the extensive medical testimony and evidence to the contrary presented at the hearing. *Id.* at 330–31. The Board was also warranted in concluding that the ALJ's credibility findings were rational given Boudreaux's failure to provide an accurate and complete medical history to the testifying physicians and his lack of truthfulness about his drug use. On the record before us, the ALJ correctly determined that Boudreaux failed to carry his burden of establishing by a preponderance of the evidence that the 2013 fall aggravated his preexisting knee condition. *See Ceres Gulf*, 683 F.3d at 232. Likewise, the record underpins the Board's conclusion that the ALJ's "findings were supported by substantial evidence and were consistent with the law." *See Ramsay Scarlett*, 806 F.3d at 330.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the Decision and Order of the Benefits Review Board.