# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
February 14, 2020

Lyle W. Cayce
Clerk

No. 18-60698

SEA-LAND SERVICES, INCORPORATED,

Petitioner,

versus

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR;
UNIVERSAL MARITIME SERVICE COMPANY;
CLARENCE J. CEASAR, JR.;
SIGNAL MUTUAL INDEMNITY ASSOCIATION, LIMITED,

Respondents.

Petition for Review of an Order of
the Benefits Review Board

Before JOLLY, SMITH, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Sea-Land Services, Inc. ("Sea-Land"), petitions for review of an order of the Benefits Review Board ("BRB"). The BRB upheld the determination of an administrative law judge ("ALJ") that Clarence Ceasar, Jr., did not aggravate his 1997 injury at Sea-Land while working for Universal Maritime Service

No. 18-60698

Company ("UMS") in 2011.  Because the BRB did not err, we deny the petition.

I.

Ceasar injured his neck and back while working as a longshoreman for Sea-Land in 1997.  Because of those injuries, Ceasar was unable to work and had to undergo several medical procedures.  Thirteen years later, Ceasar and Sea-Land reached a settlement, under which Ceasar received a lump sum instead of continuing disability payments.  Sea-Land remained on the hook for Ceasar's ongoing medical expenses.

In 2010, Ceasar's physician, Dr. Dan Eidman, approved his return to work with no restrictions, even though Ceasar continued to "describe[] his symptoms of neck and lower back pain as constant."  Soon thereafter, Ceasar started working as a longshoreman for UMS but was injured again a year later when a coworker lowered a cargo container onto his hands.

Ceasar filed a claim for compensation under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*  The LHWCA "provides compensation for the death or disability of any person engaged in 'maritime employment'" under certain circumstances.  *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 415 (1985).  Ceasar claimed that he injured his shoulder, neck, and back when he tried to free his hands from the container.

Sea-Land and UMS contested responsibility for treating Ceasar's neck and back injuries following the 2011 accident.  Sea-Land (and Ceasar) contended that UMS was responsible because the 2011 accident either caused new injuries or aggravated old ones.  UMS countered that Ceasar's neck and back injuries stemmed exclusively from the 1997 accident, so Sea-Land remains responsible for treatment.  A Department of Labor ALJ sided with UMS and ordered Sea-Land to continue paying Ceasar's medical expenses.

2

No. 18-60698

A claimant with a preexisting condition is entitled to LHWCA compensation if a workplace incident aggravates that condition. *Bis Salamis, Inc. v. Dir., OWCP*, 819 F.3d 116, 128. Aggravation occurs where "an employment injury worsens or combines with a preexisting impairment to produce a disability greater than that which would have resulted from the employment injury alone." *Id.* An employer whose employee aggravates a preexisting condition must compensate the claimant for the entire resulting liability, *id.*, regardless of whether the preexisting condition is the result of an accident at a prior employer's workplace. *Operators & Consulting Servs., Inc. v. Dir., OWCP*, 170 F. App'x 931, 934 (5th Cir. 2006); *see also Metro. Stevedore Co. v. Crescent Wharf & Warehouse Co.*, 339 F.3d 1102, 1104−05 (9th Cir. 2003). But if the disability results only from the natural progression of injuries sustained while working for a former employer, then there is no aggravation, and the previous employer remains responsible. *Operators & Consulting Servs.*, 170 F. App'x at 934; *see also Metro. Stevedore*, 339 F.3d at 1105. At issue is whether Ceasar's injuries were aggravated in the 2011 incident or were the natural progression of his 1997 injuries.

LHWCA claims are evaluated using a three-step framework. First, the claimant must establish a *prima facie* case by showing "that (1) he suffered harm and (2) conditions of the workplace, or an accident at the workplace, could have caused, aggravated, or accelerated the harm." *Bis Salamis*, 819 F.3d at 127. Establishing a *prima facie* case raises a presumption under Section 20(a) of the LHWCA that the claimant's injury is work-related and that the claimant is entitled to compensation. *Ortco Contractors, Inc. v. Charpentier*, 332 F.3d 283, 287 (5th Cir. 2003); *see also* 33 U.S.C. § 920(a). The employer can rebut that presumption by presenting substantial evidence that its workplace did not cause or aggravate the injury. *Bis Salamis*, 819 F.3d

3

No. 18-60698

at 127. If the employer rebuts that presumption, the burden of proof falls to the claimant to demonstrate by a preponderance of the evidence that the employer's workplace caused or aggravated his injury. *Id.*

The ALJ applied that three-step framework. The ALJ first found that the testimony of Ceasar's treating physician, Dr. Eidman—who opined that the 2011 accident aggravated Ceasar's existing injuries—raised the Section 20(a) presumption. The ALJ then found that UMS successfully rebutted that presumption with reports by Doctors David Vanderweide, Robert Kagan, and Stephen Brown. Those doctors independently reviewed Ceasar's medical records and concluded that his neck and back pains reflected the natural progression of his 1997 injury. With the presumption out of the picture, the ALJ determined that Ceasar's injuries were "more likely than not a natural progression of his pre-existing condition." To reach that conclusion, the ALJ favored the reports of the independent physicians over Dr. Eidman's, reasoning that Ceasar's medical records better supported their conclusions. The ALJ assigned little weight to Ceasar's testimony, observing that he contradicted his own medical records and had a motive to ascribe his injury to UMS.[1]

## II.

Our review of the BRB's decision is limited. We ensure only that it "adhered to its proper scope of review—i.e., whether the ALJ's findings of fact are supported by substantial evidence and are consistent with the law." *Gulf Best Elec., Inc. v. Methe*, 396 F.3d 601, 603 (5th Cir. 2004). "Substantial evidence is that relevant evidence—more than a scintilla but less than a

---

[1] The terms of Ceasar's settlement with Sea-Land limit his compensation to medical expenses if his injuries stem from his 1997 accident. If, however, Ceasar aggravated his injuries in 2011, he would receive medical benefits *and* disability from UMS in addition to the lump-sum disability payment from his settlement with Sea-Land.

No. 18-60698

preponderance—that would cause a reasonable person to accept the fact find-ing." *Ceres Gulf, Inc. v. Dir., OWCP*, 683 F.3d 225, 228 (5th Cir. 2012) (quota-tion marks omitted).  That deferential standard reflects the ALJ's role as "the factfinder who is exclusively entitled to assess both the weight of the evidence and the credibility of witnesses." *Id.*

Sea-Land attacks the ALJ's decision on two grounds.  First, it asserts that the ALJ "erred in finding that the opinions of [Doctors] Vanderwiede [*sic*], Kagan, and Brown constituted substantial evidence needed to rebut the opin-ion of Dr. Eidman, [Ceasar's] long-time treating physician."  Sea-Land empha-sizes that Dr. Eidman's testimony was entitled to greater weight than the opinion of non-treating physicians.  Sea-Land critiques the weight given to the independent doctors in several ways, contending that: (1) the independent doc-tors based their evaluations on incomplete copies of Ceasar's medical records; (2) only one of the independent doctors, Dr. Brown, examined Ceasar in person; (3) the independent doctors' credentials are not in the record; and (4) the inde-pendent doctors' reports are flawed.

UMS responds that the independent doctors relied on complete copies of Ceasar's records and that Sea-Land mischaracterizes the doctors' reports. UMS also points to the opinions of the three independent physicians.  Dr. Brown reported that Ceasar's "cervical and lumbar symptoms are a result of the original injury of August 17, 1997."  "[A]lthough the more recent injury may have caused a temporary exacerbation of [Ceasar's] symptoms, the base-line amount of pain and the baseline issues the claimant was having [are] related to the 1997 injury."  Dr. Kagan stated that "aggravations of a pre-existing condition occur at the time of the incident.  There is no delayed reac-tion."  He also stated that "[i]n this case, the hospital records follow the injury to his hands (07-27-11) as well as the first visit to Eidman (08-07-11)

5

approximately three weeks later mak[ing] no mention of any possible aggra-vation of the patient's pre-existing condition involving the cervical or lumbar spine." Dr. Vanderweide opined that "it is unreasonable to suggest a material aggravation or acceleration of [Ceasar's] cervical or lumbar complaints based upon the injury event of 2011. While the possibility of an exacerbation or flare-up of his symptoms may have occurred, there is insufficient evidence to suggest that the underlying pre-existing musculoskeletal condition was advanced in severity beyond its natural course by the injury event."

Although Sea-Land's criticisms have some force, they do not establish that the Section 20(a) presumption should have remained in effect. The "substantial evidence" showing needed to rebut the presumption is a "*minimal requirement*" less demanding than a preponderance of the evidence. *Ortco Contractors*, 332 F.3d at 289; *see also Ceres Gulf*, 683 F.3d at 231. As the ALJ and BRB concluded, the contrary opinions of three independent doctors that reviewed Ceasar's medical records met that low burden.[2]

Sea-Land's second contention goes to the ultimate issue: whether the ALJ erroneously attributed Ceasar's injuries to the 1997 accident. In making its case, Sea-Land avers that the ALJ discredited Ceasar's testimony irra-tionally in light of corroborating evidence and that Dr. Eidman's opinion is superior to that of the other three physicians. Some of Sea-Land's points may have convinced another factfinder. But to obtain the relief it seeks, Sea-Land must demonstrate that no reasonable mind could have arrived at the ALJ's conclusion. *Avondale Indus., Inc. v. Dir., OWCP*, 977 F.2d 186, 189 (5th Cir. 1992). Sea-Land fails to clear that high hurdle.

---

[2] *See Ortco Contractors*, 332 F.3d at 286–87, 290 (holding that the BRB erroneously determined that three physicians' opinions insufficiently rebutted the Section 20(a) presumption).

No. 18-60698

It is true, for instance, that the opinion of a treating physician may be entitled to "considerable weight in determining disability." *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000). Nevertheless, an "ALJ may give less weight to a treating physician's opinion when there is good cause shown to the contrary."[3] In this case, the ALJ was within his power to discount Dr. Eidman's testimony based on finding that (1) "much of his testimony and many of his reports are totally inconsistent with the testimony of his patient, who also accused him and his staff of falsifying records"; (2) his "testimony was at times internally inconsistent"; and (3) his conclusions were undermined by the "credible and well-reasoned opinions" of three independent physicians.

Moreover, it isn't this court's role to reevaluate each piece of evidence presented to the ALJ, as Sea-Land asks this court to do. The ALJ carefully considered Dr. Eidman's testimony, Ceasar's treatment records, and the reports of three independent physicians. In a thorough opinion, the ALJ determined that the independent physicians' reports and Ceasar's medical records indicated that Ceasar's injuries stemmed from the 1997 accident. "Although another factfinder might have reached a different conclusion, the ALJ thoroughly explained his reasons in this disputed case." *Ceres Gulf*, 683 F.3d at 232. Where confronted with factual disputes surrounding a claim for LHWCA compensation, "[n]either we nor the [BRB] may substitute our judgment for that of the ALJ." *Bis Salamis*, 819 F.3d at 126.

Because the ALJ's decision is supported by substantial evidence and is consistent with the law, the petition for review is DENIED.

---

[3] *Id.* (cleaned up); *see also Avondale Indus.*, 977 F.2d at 189 ("As fact finder, the ALJ determines questions of credibility of witnesses and of conflicting evidence. He is not required to accept the opinion or theory of a medical expert that contradicts the ALJ's findings based on common sense.").