# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 28, 2022

Lyle W. Cayce
Clerk

No. 21-60350

Ricky Guidry,

*Petitioner*,

*versus*

Director, Office of Workers' Compensation Programs, *United States Department of Labor*; Tampa Pipe & Welding, Incorporated,

*Respondents*.

Petition for Review of an Order
of the Benefits Review Board
BRB No. 20-0469

Before Dennis, Elrod, and Duncan, *Circuit Judges*.

Per Curiam:*

Ricky Guidry petitions for review after being denied benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–950. We deny the petition.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-60350

I.

In March 2015, Guidry worked a temporary assignment with a marine contractor, Respondent Tampa Pipe & Welding, Inc.[1] While moving scaffolding at a port terminal, he felt a sharp pain in his back, which caused him to drop the scaffolding onto his head, neck, and back.

Guidry had a prior well-documented history (dating from 2010 to 2014) of joint, abdominal, arm, back, leg, hip, and neck pain mitigated with prescription pain medication. These ailments stem from a 2010 vehicle accident and a 2013 work-related electrocution accident. Days before the March 2015 incident, Guidry filled a pain medication prescription to treat those lingering symptoms.

A week after the incident, Guidry sought attention from Tampa Pipe's medical staff for hip and thigh pain. When Tampa Pipe denied his request for medical attention, Guidry went to the Tampa VA Hospital, where an MRI resulted in a diagnosis of various back, spine, and thigh issues.

Guidry tried to return to work but felt more leg pain, so he went back to the Tampa VA. A different physician diagnosed a chronic disc problem and discharged Guidry with instructions to return to work but not lift over 20 pounds or operate heavy machinery. The physician also observed that Guidry exhibited pain-medication-seeking behavior. Back at work, Tampa Pipe sent Guidry to be examined by an occupational medicine specialist, Dr. Bruce Bohnker, who agreed with the VA's work limitations and referred Guidry to an orthopedic spinal surgeon for his herniated disc. Dr. Bohnker believed the 2015 incident aggravated Guidry's prior back injury.

---

[1] Shellback Marine (through Oasis Outsourcing) employed Guidry full-time as a temporary worker for marine contractors, like Tampa Pipe. Both Shellback Marine and Tampa Pipe had LHWCA coverage through Signal Mutual.

No. 21-60350

Guidry then stopped working and returned to live with his fiancée Sherry Kerry in Alexandria, Louisiana, where he was treated regularly at the Alexandria VA Hospital. Guidry soon reported significant neck and back pain, leading to more MRIs and diagnoses of neck and back problems. In July 2015, Guidry applied for LHWCA benefits.

Two orthopedic surgeons, Dr. Neil Romero and Dr. David Muldowny, evaluated Guidry. Both diagnosed degenerative changes in Guidry's cervical and lumbar spine, and Dr. Muldowny additionally diagnosed spinal stenosis in the cervical region. Dr. Romero concluded the pain was "likely a continuation of ongoing symptoms," unrelated to the work injury. Dr. Robert Kagan, a radiologist, reviewed Guidry's MRIs and concluded there was "never any objective evidence of injury" in the spine related to the 2015 work incident. Guidry supplemented his LHWCA claim with their medical reports in December 2016. After two years of failing to settle the claim before the Office of Workers' Compensation Programs (OWCP), OWCP referred the claim to the Office of Administrative Law Judges for adjudication. The parties submitted evidence to the ALJ including Guidry's medical history, reports from Drs. Romero, Muldowny, Kagan, and Bohnker; surveillance footage of Guidry from a private investigator; and vocational expert reports.

In December 2019, the ALJ held a hearing at which Guidry, Kerry, the private investigator, and the vocational expert testified. The ALJ concluded that, though Guidry presented a *prima facie* case of a work-related injury, he failed to prove by a preponderance of the evidence that the 2015 incident caused or aggravated problems with his lower extremities, lumbar spine, or cervical spine. *See* 33 U.S.C. § 920(a). Accordingly, the ALJ denied benefits. Guidry appealed to the Benefits Review Board ("BRB"), which affirmed the ALJ's decision. 33 U.S.C. § 921(b)(3). Guidry petitions for our review.

## II.

We review the BRB's decision under a highly deferential standard, assessing only "whether it has adhered to its proper scope of review—*i.e.*, whether the ALJ's findings of fact are supported by substantial evidence and are consistent with the law." *Ceres Gulf, Inc. v. Dir., OWCP*, 683 F.3d 225, 228 (5th Cir. 2012) (citation omitted). "Substantial evidence is that relevant evidence—more than a scintilla but less than a preponderance—that would cause a reasonable person to accept the fact finding." *Ibid.* (internal quotations and citation omitted). "Neither we nor the [BRB] may substitute our judgment for that of the ALJ." *Bis Salamis, Inc. v. Dir., OWCP*, 819 F.3d 116, 126 (5th Cir. 2016) (citation omitted). The ALJ "is exclusively entitled to assess both the weight of the evidence and the credibility of witnesses." *Ceres Gulf*, 683 F.3d at 228 (collecting cases). We "may vacate the [BRB]'s decision if it improperly fails to accept the ALJ's assessments." *Bis Salamis*, 819 F.3d at 126 (citation omitted).

## III.

Despite a pre-existing condition, an otherwise eligible claimant may receive LHWCA benefits "if a workplace incident aggravates that condition." *Sea-Land Servs., Inc. v. Dir., OWCP*, 949 F.3d 921, 924 (5th Cir. 2020) (citing *Bis Salamis*, 819 F.3d at 128). "Aggravation occurs where an employment injury worsens or combines with a preexisting impairment to produce a disability greater than that which would have resulted from the employment injury alone." *Ibid.* (internal quotations and citation omitted). There is no aggravation, however, where the claimed disability results only from the natural progression of the pre-existing condition. *Id.* at 924–25. At issue here is whether the 2015 workplace incident aggravated Guidry's pre-existing condition (making him eligible for benefits) or whether Guidry's

4

injury represents only the natural progression of that pre-existing condition (making him ineligible for benefits).

We evaluate this issue in three steps. *Id.* at 925. First, Guidry must establish a *prima facie* case of causation "by showing 'that (1) he suffered harm and (2) conditions of the workplace, or an accident at the workplace, could have caused, aggravated, or accelerated the harm.'" *Ibid.* (quoting *Bis Salamis*, 819 F.3d at 127). All agree Guidry satisfied this step. This creates a presumption under § 920(a) that his injury was "work-related" and he "is entitled to compensation." *Ibid.* (citation omitted). Second, Respondents can rebut the presumption by "presenting substantial evidence that [Tampa Pipe's] workplace did not cause or aggravate [Guidry's] injury." *Ibid.* Third, if the presumption is rebutted, the burden shifts back to Guidry to show by a preponderance of the evidence that the workplace incident caused or aggravated his injury. *Ibid.* Guidry challenges the ALJ's conclusions at steps two and three.

## A.

At step two, the ALJ found Respondents rebutted the § 920(a) presumption with evidence of pre-existing symptomatic neck and back pain in Guidry's medical history and Dr. Kagan's report analyzing his pre- and post-incident MRIs. Guidry asserts that Dr. Kagan's opinion alone was insufficient to rebut the presumption because it was based solely on his interpretation of select MRI scans and X-rays. We disagree.

"The 'substantial evidence' showing needed to rebut the § 920(a) presumption is a '*minimal* requirement' less demanding than a preponderance of the evidence." *Sea-Land*, 949 F.3d at 926 (quoting *Ortco Contractors, Inc. v. Charpentier*, 332 F.3d 283, 289 (5th Cir. 2003)). Contrary to Guidry's contentions, Respondents need only provide "factual doubt"

No. 21-60350

that the symptoms are work-related. *See Ceres Gulf*, 683 F.3d at 231; *see also Ramsay Scarlett & Co. v. Dir., OWCP*, 806 F.3d 327, 333 (5th Cir. 2015).

Here, Dr. Kagan's medical opinion that Guidry's pain is not work related based on Guidry's history of MRIs generates sufficient "factual doubt" to satisfy Respondents' minimal burden. *See, e.g.*, *Conoco, Inc. v. Dir., OWCP*, 194 F.3d 684, 690 (5th Cir. 1999) (rejecting argument that rebuttal evidence must entirely rule out that the injury was work-related). Substantial evidence thus supports the ALJ's conclusion that Respondents rebutted the § 920(a) presumption.

## B.

At step three, the ALJ found Guidry did not meet his burden to show the 2015 incident caused or aggravated his injury. Relevant here, the ALJ acts as the factfinder, "assess[ing] the relevance and credibility of testimony, including expert testimony," and determining questions of credibility and conflicting evidence. *Ceres Gulf*, 683 F.3d at 229. The ALJ is "free to disregard parts of some witnesses' testimony while crediting other parts of that testimony[,]" even experts' opinions. *Mijangos v. Avondale Shipyards, Inc.*, 948 F.2d 941, 945 (5th Cir. 1991). As a result, a reviewing court must refrain from "reevaluat[ing] each piece of evidence presented to the ALJ." *Sea-Land*, 949 F.3d at 927. "Neither we nor the [BRB] may substitute our judgment for that of the ALJ." *Bis Salamis*, 819 F.3d at 126. "Although another factfinder might have reached a different conclusion," we must accept the ALJ's factual conclusions. *Ceres Gulf*, 683 F.3d at 232. Guidry argues the ALJ incorrectly found him not credible and improperly weighed the evidence at step three by, *inter alia*, conferring lesser weight to treating physicians like Dr. Bohnker. We disagree.

Each of Guidry's step-three arguments improperly asks us to reweigh the facts and draw different inferences than the ALJ. We cannot do so. *See*

6

No. 21-60350

*Bis Salamis*, 819 F.3d at 126. The ALJ found Guidry and Kerry were not credible based on Guidry's medical history and years of relying on prescription pain medication to treat back pain—in direct conflict with their testimony and Guidry's representations to the doctors.[2] Likewise, because Guidry had falsely represented his medical history to Drs. Muldowny and Bohnker, the ALJ attributed less weight to their reports and testimony. The ALJ relied primarily on evidence from Drs. Kagan and Romero to find the work-place incident had not aggravated Guidry's back injuries. As a result, the ALJ denied benefits.

While evidence points both ways, the ALJ gave greater weight to evidence indicating the 2015 incident did not aggravate Guidry's pre-existing condition. Because those findings "are supported by substantial evidence and are consistent with the law," *Ceres Gulf*, 683 F.3d at 228, the ALJ did not reversibly err and the BRB correctly affirmed his decision.

PETITION DENIED

---

[2] In reciting the evidence, the ALJ referenced a withdrawn news story about a "Ricky Guidry" (not the petitioner) arrested for cocaine possession. Guidry vigorously contests this as reversible error, but he is mistaken. The BRB correctly concluded that, while the story should have been excluded from the record per the parties' agreement, the ALJ did not rely on it for his credibility determination.